IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SIGNAL RIDGE OWNERS § <br> ASSOCIATION, INC., § <br> § <br> Plaintiff, § <br> § <br> VS. § Civil Action No. 3:22-CV-1385-D <br> § <br> LANDMARK AMERICAN § <br> INSURANCE COMPANY, et al., § <br> § <br> Defendants. § | |

MEMORANDUM OPINION
AND ORDER

The instant motion to compel arbitration and dismiss this lawsuit requires that the court decide whether nonsignatories to an insurance policy that contains an arbitration clause can invoke the clause to compel arbitration of the claims asserted against them in this lawsuit. This overarching question turns on the resolution of several sub-issues. For the reasons explained, the court grants the motion, compels arbitration, and dismisses this lawsuit.

I

This is a removed action by plaintiff Signal Ridge Owners Association, Inc. ("Signal Ridge") against defendant-insurers Landmark American Insurance Company ("Landmark"), Lexington Insurance Company ("Lexington"), National Fire & Marine Insurance Company ("National"), and Hilltop Specialty Insurance Company f/k/a Hudson Specialty Insurance

Company ("Hudson")[1] arising from an insurance dispute.[2] Signal Ridge is a Texas-based corporation that serves as the homeowners association for a condominium complex ("the property"). Defendants together insured the property pursuant to an "insurance program" for the period December 2020 to December 2021. Ds. Mot. to Compel Arb. (ECF No. 8) at 2. Under the insurance agreement,[3] liability for any loss was to be distributed among the insurers as follows: Landmark (45%), Lexington (30%), National (15%), and Hudson (10%). Each insurer appears to have furnished its own standard policy language and riders that were then affixed to one another, accompanied by one overarching Shared Limits/Shared Capacity Dispute Protocol, and delivered to Signal Ridge.

The Hudson policy is the only one that contains an arbitration clause endorsement.

---

[1]After Signal Ridge filed suit, Hudson changed its name to Hilltop Specialty Insurance Company. For clarity, the court will refer to the company as "Hudson" in this memorandum opinion and order.

[2]"[T]he [Fifth] Circuit has never discussed the appropriate standard for a district court to apply when considering a motion to stay or compel arbitration." *Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F.Supp.3d 431, 443 (N.D. Tex. 2019) (Scholer, J.). Other judges of this court have noted that "[t]he majority of other circuits apply a summary judgment-like standard, giving deference to the claims of the non-movant." *Id.* (quoting *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 2010 WL 148292, at *3 (E.D. La. Jan. 11, 2010)). The court agrees with the weight of authority and presents the facts in the light most favorable to the non-movant.

[3]A copy of the parties' purported agreement is appended to defendants' motion. The insured listed in the policy is not Signal Ridge but McDermott Road Partners, LLC ("McDermott"). The court has not been made aware of any connection between Signal Ridge and McDermott. And because neither party contests that the insurance policy provided is the one involving Signal Ridge and defendants, and because the address of the property as listed in the policy appears to support the conclusion, the court assumes that the policy submitted is the relevant one for purposes of ruling on the instant motion.

The Arbitration Clause Endorsement in that policy states, in pertinent part:

> [i]f there is any dispute or disagreement as to the interpretation of the terms and conditions of this policy or the development, adjustment, and/or payment of any claim, they shall be submitted to the decision of a Joint Arbitrator that the Insured and Company shall appoint jointly.
> . . .
>
> Notwithstanding the location of the arbitration, all proceedings pursuant hereto shall be governed by the law of the State of New York.
>
> Law and Jurisdiction
>
> This Policy shall be interpreted solely according to the law of the State of New York without regard to the choice of law provisions of New York. . . .

Ds. App. (ECF No. 8-2) at 405.

In early 2021, while the policy was in effect, the property was damaged by wind and hail. Signal Ridge made a claim for coverage, and defendants hired an adjuster to investigate and make a coverage determination. Signal Ridge then filed the instant suit, objecting to several aspects of the claim adjustment process and asserting both contractual and extracontractual (statutory) claims.

Defendants now move to compel arbitration and dismiss this suit, invoking the Arbitration Clause Endorsement in the Hudson policy. The court is deciding the motion on the briefs.

II

Defendants move to compel arbitration pursuant to the Arbitration Clause Endorsement and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"). Under § 2 of the FAA, written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA thus "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3-4).

When considering a motion to compel arbitration, the court engages in a two-step inquiry. First, the court determines "whether the parties agreed to arbitrate [the] dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *see also Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (per curiam). "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the arbitration agreement." *Webb*, 89 F.3d at 258. Second, the court decides "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Mitsubishi Motors*, 473 U.S. at 628. If the court concludes that there is a valid agreement to arbitrate and that there are no legal impediments to doing so, then the court must grant the motion. *Celaya v. Am. Pinnacle Mgmt. Servs., LLC*, 2013 WL 4603165, at *2 (N.D. Tex. Aug. 29, 2013) (Fitzwater, C.J.).

"The party seeking arbitration has the burden of establishing the existence of an agreement to arbitrate." *Est. of Benitez v. Sears, Roebuck & Co.*, 2013 WL 4223875, at *2 (N.D. Tex. Aug. 14, 2013) (Fitzwater, C.J.). Thereafter, "a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

### III

### A

The court addresses first whether the parties agreed to arbitrate the instant dispute. The first step in answering this question is determining whether there exists a valid agreement to arbitrate. *Webb*, 89 F.3d at 258. Defendants contend that the arbitration endorsement binds all parties; Signal Ridge counters that defendants have failed to show that the parties ever reached an agreement to arbitrate. Because the Arbitration Clause Endorsement is found only in the Hudson policy, the court must start by resolving whether the agreement is binding between Hudson and Signal Ridge.

In determining whether a valid arbitration agreement exists, courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "Texas courts apply the 'most significant relationship test' to determine which state's law to apply in a breach of contract case." *Krohn v. Spectrum Gulf Coast, LLC*, 2019 WL 4572833, at *2 (N.D. Tex. Sept. 19, 2019) (Scholer, J.) (first citing *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 802 (5th Cir. 2007); and then citing *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000)). "Relevant factors

to consider under this test include 'the place where the injury occurred, the place where the injury causing conduct occurred, the parties' residence, and the place where the relationship, if any, between the parties is centered." *Colony Ins. Co. v. Emerald Valley Villas Homeowners' Ass'n, Inc.*, 2021 WL 8014528, at *3 (N.D. Tex. Feb. 8, 2021) (Rutherford, J.) (quoting *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 674 (5th Cir. 2003)).

Here, the insured property is located in Texas. Signal Ridge is a Texas-based entity. And the parties in their briefing tacitly agree that Texas law governs for purposes of determining whether an arbitration agreement exists. Accordingly, the court will apply Texas contract law. *See Colony Ins. Co.*, 2021 WL 8014528, at *4.[4]

Under Texas law, endorsements or riders "attached to an insurance policy when delivered and accepted" are generally considered "part of the policy itself—even when these additional forms are not independently signed." *Id.* (first citing *Callaway Dev. Corp. v.*

---

[4]The Arbitration Clause Endorsement provides that the policy "shall be interpreted solely according to the law of the State of New York without regard to the choice of law provisions of New York." Ds. App. (ECF No. 8-2) at 405. This does not alter the court's conclusion that Texas law controls for purposes of determining whether an arbitration agreement exists. This is because it would make little sense to give effect to a portion of an arbitration agreement before the court has even concluded that the arbitration agreement exists and is binding on the parties. *See Canidae, LLC v. Cooper*, 2022 WL 660197, at *12 (N.D. Tex. Feb. 9, 2022) (Parker, J.) (citing *Edminster, Hinshaw, Russ & Assocs., Inc. v. Downe Twp.*, 953 F.3d 348, 351 (5th Cir. 2020)) ("When determining whether a contract was formed in the first instance—as this Court must here—courts do not resort to contractual choice-of-law provisions."), *rec. adopted*, 2022 WL 658581 (N.D. Tex. Mar. 4, 2022) (Hendrix, J.). And even if that conclusion is incorrect, New York courts have adopted the same approach for determining when an endorsement becomes part of an insurance contract. *See, e.g.*, *Tolar v. Metro. Life Ins. Co.*, 80 N.E.2d 53, 54 (N.Y. 1948) (citing to *Minsker v. John Hancock Mut. Life Ins. Co.*, 173 N.E. 4 (N.Y. 1930)).

*Steadfast Ins. Co.*, 2007 WL 1032303, at *2 (W.D. Tex. Apr. 3, 2007); and then citing *Dunn v. Traders & Gen. Ins. Co.*, 287 S.W.2d 682, 687 (Tex. Civ. App. 1956, writ ref'd n.r.e.)) (concluding that arbitration endorsements to an insurance policy were binding on the parties). The arbitration endorsement is listed on the Forms and Endorsements Schedule and is included in the list of provisions to which the policy's Notwithstanding Endorsement applies. The endorsement appears to have been attached to the policy. Finally, defendants have provided a declaration from Gene Buchner, a Hudson employee, stating that the documents identified as the Hudson policy "are true and correct copies of the forms and endorsements provided by [Hudson] for the Insurance Program that provides property coverage to Signal Ridge Owners Association, Inc." Ds. App. (ECF No. 8-2) at 425.

Accordingly, defendants have established that the Arbitration Endorsement is part of the Hudson policy. As signatories to that policy, Hudson and Signal Ridge are bound by it. The court is therefore obligated at least to compel Hudson and Signal Ridge to arbitrate the claims that Signal Ridge brings against Hudson in this lawsuit. *See Celaya*, 2013 WL 4603165, at *2.

B

The court must next decide whether the arbitration provision applies to the other three defendants: Landmark, Lexington, and National. Because this question is one of the existence, rather than the scope, of an agreement to arbitrate, it is also governed by Texas contract law. *See Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 398 (5th Cir. 2022) ("When a court decides whether an arbitration agreement exists, it necessarily decides its

enforceability between parties.")

1

When interpreting a contract, the lodestar is the parties' intent; thus Texas courts "construe a contract in a manner that gives effect to the parties' intent expressed in the text," but they may also "take into account the facts and circumstances surrounding the contract's execution." *Rieder v. Woods*, 603 S.W.3d 86, 94 (Tex. 2020) (internal quotation marks omitted). Pertinent to the instant case, "Texas courts have long recognized that, under appropriate circumstances, instruments pertaining to the same transaction may be read together to ascertain the parties' intent, even if the parties executed the instruments at different times and the instruments do not expressly refer to each other." *Id.* (internal quotation marks omitted). This general rule applies even if the agreements are not between the same parties. *Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex. 1981).

In making this determination, courts might examine whether the instruments were "each a necessary part of the same transaction, without any one of which the transaction was not complete." *Bd. of Ins. Comm'rs v. Great S. Life Ins. Co.*, 239 S.W.2d 803, 809 (Tex. 1951). Other relevant considerations include whether each instrument "had a distinct purpose, established separate obligations, and applied to different parties." *Tristani v. OptionSellers.com, Inc.*, 2020 WL 9720540, at *3 (E.D. Tex. Aug. 12, 2020) (citing *Rieder*, 603 S.W.3d at 98). Courts should be cautious in applying this analysis, however, because it is "simply a device for ascertaining and giving effect to the intention of the parties and cannot be applied arbitrarily and without regard to the realities of the situation." *Miles v.*

*Martin*, 321 S.W.2d 62, 65 (Tex. 1959).

2

There is evidence in the record to support both Signal Ridge and the insurers. On the one hand, some facts favor construing the four insurance contracts as being one combined, larger contract, and concluding in turn that the Hudson arbitration clause applies to all four insurers. For example, the four contracts pertain to the same transaction; they insure the same property; and their coverage periods are coterminous. Each policy can be read to refer to the existence of the other policies. And each policy accounts for only a portion of the total insurance coverage provided to Signal Ridge, such that the policy would not be whole without all four sets of documents; that is, each set seems to be "a necessary part" of the policy. *Great S. Life Ins. Co.*, 239 S.W.2d at 809.

What is more, in circumstances such as this, where multiple insurance providers agree to insure the same property and cover a portion of any loss, it would be odd indeed for the insured to agree to arbitrate disputes with one insurer but not the other three. While this scenario could suggest that Signal Ridge was actually unaware that it had agreed to arbitrate with *any* of the four insurers, an insured "is presumed to have read and obtained knowledge of the entire Policy, including the arbitration endorsement[], as [it was] attached when the Policy was delivered." *Colony Ins. Co.*, 2021 WL 8014528, at *4. It is more likely the case that Signal Ridge and the insurers understood that the arbitration endorsement applies to the four policies viewed as a whole.

On the other hand, however, there are facts in the record to support the conclusion that

the four policies are separate insurance contracts involving the same insured but different insurers. Each of the four agreements contains a different policy number. Several of the terms are repeated in more than one policy: the Landmark and National policies both contain Service of Suit endorsements; the Landmark, National, and Hudson policies all include exclusions for acts of terrorism; and all four policies contain provisions pertaining to the removal of debris. These provisions would at least seem to be redundant if the four contracts were intended to constitute one policy. And each individual policy includes a schedule of attachments or endorsements, but lists only the attachments to the individual policy: there is no master schedule of attachments that lists all four policies and each policy's endorsements. Even the arbitration clause itself dictates that the arbitrator is to be selected jointly by the insured and the "Company," a term used elsewhere in the Hudson policy to refer to Hudson alone.

      Signal Ridge posits that there are internal inconsistencies that demonstrate that the contracts cannot logically be construed as one agreement. It maintains that Landmark's and National's consent to suit provisions directly conflict with Hudson's arbitration clause, and thus undermine the conclusion that the four policies should be treated as one contract. The court disagrees. Arbitration clauses and consent-to-suit clauses can be read together in a way that gives effect to both. *See, e.g.*, *McDermott Int'l, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1205 (5th Cir. 1991); *Sw. LTC-Mgmt. Servs., LLC v. Lexington Ins. Co.*, 2019 WL 1715832, at *6 (E.D. Tex. Mar. 29, 2019). For example, parties can enter into a binding arbitration agreement and also consent to the jurisdiction of a given court for purposes such

as determining arbitrability and enforcing an arbitration award. *McDermott*, 944 F.2d at 1205.

Having considered the record evidence and the parties' arguments, the court concludes that the insurance policy at issue constitutes one contract between Signal Ridge, on the one hand, and the four insurers, on the other hand. The court bases this conclusion at least on the rule that multiple documents that are executed contemporaneously, that pertain to the same transaction, and that represent necessary parts of one whole agreement can be construed as one instrument. And having already determined that the arbitration clause is binding, the court concludes that all parties to this lawsuit are obligated to arbitrate any dispute that is covered by the arbitration agreement.

3

This result is supported by equitable principles.[5] "[I]n certain limited instances, pursuant to an equitable estoppel doctrine, a nonsignatory-to-an-arbitration-agreement-defendant can nevertheless compel arbitration against a signatory-plaintiff." *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 526 (5th Cir. 2000). In *Grigson* the Fifth Circuit recognized the "intertwined-claims test" formulated by the Eleventh Circuit in *MS Deal Service Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999). *Grigson*, 210 F.3d at

---

[5]The court's conclusion is also bolstered by the federal policy favoring arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (the FAA is "a congressional declaration of a liberal policy favoring arbitration"). The result also ensures efficiency and avoids piecemeal litigation, "which is strongly disfavored." *TIB-The Indep. Bankersbank v. Am. Gateway Bank*, 2010 WL 3260178, at *3 (N.D. Tex. Aug. 17, 2010) (Lindsay, J.).

527. Under this test,

> equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.

*Id.*; *but see In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 194-95 (Tex. 2007) (rejecting the second of *Grigson*'s circumstances in which equitable estoppel would apply, also known as "concerted misconduct" estoppel). The Fifth Circuit later clarified that intertwined-claims estoppel applies where "(1) a nonsignatory has a close relationship with one of the signatories and (2) the claims are intimately founded in and intertwined with the underlying contract obligations." *Newman*, 23 F.4th at 404. As Signal Ridge notes in its surreply, the Supreme Court of Texas has never formally adopted the intertwined-claims theory, but the Fifth Circuit's *Erie*-guess[6] that it would do so if given the opportunity binds this court. *Id*.

Although the defendant-insurers lack the sort of formal corporate relationship that has "generally" been required under the intertwined-claims theory, the Fifth Circuit has held that "when plaintiffs treat multiple defendants as a single unit in their pleadings, raising virtually indistinguishable factual allegations against them, then that cuts in favor of a close relationship." *Id.* at 404-405. Additionally, "[t]he test is one of consent, not coercion," and the critical factor is whether "a reasonable signatory to the arbitration agreement [would]

---

[6]*Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

anticipate being forced to arbitrate claims against the nonsignatory." *Id.*

Assuming *arguendo* that Landmark, Lexington, and National are best-characterized as nonsignatories to the arbitration agreement (a conclusion that is at odds with the court's holding above that the parties entered into one overarching contract), the court concludes that the elements of the intertwined-claims test are satisfied here. Signal Ridge has treated the four insurers as one unit throughout this litigation, which is reasonable given the extent to which the insurers are bound up with one another under the terms of the policy. Moreover, it would be logical to assume that a diligent insured who had read the entire policy would have concluded that the arbitration provision was binding on all parties.

As to the second prong, whether a particular claim is covered under the policy is an issue that can be resolved only by reference to the parties' agreement. Accordingly, determining whether the defendant-insurer's claim adjustment methods breached that agreement, violated the Texas Insurance Code, constituted deceptive trade practices, or violated their obligation to act in good faith requires the court to consult and interpret the contract. And Signal Ridge is looking to reap the benefits of that contract by obtaining insurance coverage for the claimed property damage. Thus Signal Ridge's claims "arise out of and relate directly to the written agreement." *Grigson*, 210 F.3d at 527.[7]

---

[7]This conclusion is not altered by the fact that some of Signal Ridge's claims sound in state statutory law rather than contract law. *See, e.g.*, *Elkjer v. Scheef & Stone, L.L.P.*, 8 F.Supp.3d 845, 858-59 (N.D. Tex. 2014) (Kinkeade, J.); *see also AtriCure, Inc. v. Meng*, 12 F.4th 516, 528-29 (6th Cir. 2021) (rejecting the Fifth Circuit's "expansive test" for determining whether a claim is intertwined, which dictates "that estoppel applies whenever a plaintiff's statutory or tort claim . . . is 'intertwined' with the contract's subject matter").

The court therefore concludes that the intertwined-claims theory of equitable estoppel would apply and permit Landmark, Lexington, and National—purported "nonsignatories" to the arbitration agreement—to compel Signal Ridge to arbitrate the claims against them. Accordingly, even if the court had not concluded as a matter of simple contract interpretation that all parties were signatories to one contract, compelling arbitration would nevertheless be warranted in this case.[8]

IV

Having concluded that a valid agreement to arbitrate exists between Signal Ridge and the defendant-insurers, the court must next determine "whether the dispute in question falls within the scope of the arbitration agreement." *Webb*, 89 F.3d at 258.

A

Determining the scope of an arbitration agreement involves applying state rules of contract interpretation. *Tittle v. Enron Corp.*, 463 F.3d 410, 419 (5th Cir. 2006). Because the Arbitration Clause Endorsement binds all parties, and because that agreement contains a choice-of-law provision choosing New York law, the court would normally be required to decide whether Texas or New York law governs. But "courts only undertake a choice-of-law

---

[8]The parties have also briefed the applicability of the "direct benefits" theory of estoppel, which has been recognized in Texas. *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131-32 (Tex. 2005). The theory is typically applied, however, when a *nonsignatory plaintiff* is simultaneously seeking to reap the benefits of an agreement and avoid the burdens of the agreement, including the obligation to arbitrate disputes. *See, e.g.*, *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005). Because that is not the factual scenario presented here, the court need not address the applicability of the direct benefits theory.

analysis if there is a conflict of law that actually effects the outcome of an issue." *Flagship Credit Corp. v. Indian Harbor Ins. Co.*, 481 Fed. Appx. 907, 910 (5th Cir. 2012). Here, there is no such conflict.

"Under Texas law, a court construing a contract must read that contract in a manner that confers meaning to all of its terms, rendering the contract's terms consistent with one another." *Tittle*, 463 F.3d at 419. "No single provision taken alone will be given controlling effect." *Id.* (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). The parties' intent remains paramount. *Rieder*, 603 S.W.3d at 94. And "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors*, 473 U.S. at 625.

The approach taken by New York courts differs only slightly. The "pronounced federal policy in favor of arbitration" and the principle that "arbitration clauses [should be] liberally construed" with "any doubts in this regard [resolved] in favor of arbitration" remain. *Arthur v. Jones Chems., Inc.*, 1995 WL 930797, at *3 (W.D.N.Y. Mar. 13, 1995); *see also Blatt v. Sochet*, 606 N.Y.S.2d 11, 13 (N.Y. App. Div. 1993) ("There is a strong State policy of giving broad full effect to arbitration clauses."). And courts must still be careful to interpret contracts so as to avoid rendering any provision meaningless or contradictory. *Burlington Ins. Co. v. NYC Transit Auth.*, 79 N.E.3d 477, 483 (N.Y. 2017). But when determining the scope of an arbitration agreement, both state and federal courts in New York start by classifying the clause as either broad or narrow. *See, e.g., Gerling Glob. Reinsurance Corp. v. Home Ins. Co.*, 752 N.Y.S.2d 611, 618 (N.Y. App. Div. 2002) (citing

- 15 -

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001)). "Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Louis Dreyfus Negoce*, 252 F.3d at 224 (internal quotation marks omitted).

The instant arbitration agreement is similar to other clauses that have been deemed "broad" by New York courts. *See, e.g.*, *Abram Landau Real Est. v. Bevona*, 123 F.3d 69, 71 (2d Cir. 1997); *R.H. Macy & Co. v. Nat'l Sleep Prods., Inc.*, 347 N.E.2d 887, 887-88 (N.Y. 1976). For that reason, the court can presume arbitrability, as dictated by New York law, and conclude that arbitration is appropriate even as to "collateral matter[s]." *Louis Dreyfus Negoce*, 252 F.3d at 224.

Accordingly, in cases involving broad arbitration clauses, Texas and New York law operate similarly in all respects pertinent to the present case: there is a presumption in favor of arbitration, and broad arbitration agreements are given full effect in a manner that avoids rendering any portion of the contract meaningless. Thus the court's interpretation of the scope of the clause is the same regardless which law applies. A formal choice-of-law analysis is therefore unnecessary.

B

The arbitration provision in the parties' insurance agreement dictates that "any dispute or disagreement as to the interpretation of the terms and conditions of this policy or the development, adjustment, and/or payment of any claim . . . shall be submitted to the decision

of a Joint Arbitrator that the insured and Company shall appoint jointly." Ds. App. (ECF No. 8-2) at 405. Signal Ridge alleges several causes of action, some sounding in contract law and some sounding in state statutory law. But each count of Signal Ridge's original petition is based on the same set of alleged facts: that Signal Ridge made a property damage claim to the insurers and the insurers conducted an objectionable investigation, adjustment, and payment process. Thus even the statutory claims that Signal Ridge makes arise from "the development, adjustment, and/or payment of any claim." *Id*.

Additionally, under both Texas and New York law, statutory claims are arbitrable, provided the legislature did not evince a contrary intention. *AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 200 (Tex. App. 2003, no pet.); *Fletcher v. Kidder, Peabody & Co.*, 619 N.E.2d 998, 1003 (N.Y. 1993). The burden is on the party opposing arbitration to demonstrate that the legislature communicated a contrary intent. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987). Signal Ridge has not done so. The arbitration clause appears to capture statutory and contractual claims because it states that "*any* dispute or disagreement . . . shall be submitted" to arbitration.[9] Ds. App. (ECF No. 8-2) at 405 (emphasis added). Therefore, the scope of the arbitration clause includes Signal Ridge's contractual and extracontractual (i.e., statutory) claims.

---

[9]A clause need not expressly refer to statutory causes of action in order to apply to them; general, broad arbitration agreements can be sufficient. *See, e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 23 (1991) (holding that an employee's statutory claim was arbitrable pursuant to an arbitration clause requiring parties to "arbitrate any dispute, claim or controversy" arising between the employee and the employer).

Signal Ridge contends, however, that the text of the arbitration provision confines the scope of arbitrable claims to those brought against Hudson. To support this argument, Signal Ridge points to the use of the terms "this policy" and "Company" in the arbitration clause; these terms, posits Signal Ridge, are used throughout the Hudson policy to refer to Hudson's policy alone. P. Resp. to Ds. Mot. to Compel Arb. (ECF No. 16) at 10-11. The court disagrees.

This argument overlooks the reality of the insurance program at issue. Any claim against Hudson regarding the method used for evaluating a claim is, by virtue of the structure of the policy, a claim against all four insurers. Therefore, the logical conclusion, and the one that best effectuates the parties' intent, is that all claims pertaining to "the development, adjustment, and/or payment of any claim" made under the policy are arbitrable, regardless whether the claim is brought against Hudson or any of the other three insurers. Accordingly, the court concludes that all of the claims made by Signal Ridge in the instant suit fall within the scope of the parties' arbitration agreement.

V

Finally, the court must determine whether any external impediments will prevent the parties from arbitrating the instant dispute. *Mitsubishi Motors*, 473 U.S. at 628. The burden is on the party opposing arbitration to identify any legal constraints that foreclose arbitration of the relevant issues. *See Leggett v. Am.'s Servicing Co.*, 2007 WL 2398510, at *3 (N.D. Tex. Aug. 22, 2007) (Lindsay, J.); *see also Spinelli v. NFL*, 96 F.Supp.3d 81, 99 (S.D.N.Y. 2015).

Signal Ridge has not pointed to the existence of any external legal constraint or impediment precluding arbitration of the instant claims. Because Signal Ridge was obligated to do so, the court concludes that no such constraints exist, and arbitration is required.

VI

Defendants also move to dismiss this action. "When the court determines that all claims in a lawsuit are arbitrable, the court must stay the suit pending arbitration." *Heritage Cap. Corp. v. Christie's, Inc.*, 2017 WL 1550514, at *6 (N.D. Tex. May 1, 2017) (Fitzwater, J.) (citing 9 U.S.C. § 3). "This rule, however, was not intended to limit dismissal of a case in the proper circumstances. The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (emphasis in original). When, as here, "[t]he only possible role the Court could have would be to review the arbitration award once the proceedings are concluded[,]" the court should dismiss rather than stay. *SGC Health Grp., Inc. v. Eclinicalworks, LLC*, 2016 WL 2595109, at *2 (N.D. Tex. May 4, 2016) (Lynn, C.J.). Because the court has concluded that all of Signal Ridge's claims are arbitrable, the court grants the motion to dismiss and dismisses this action by judgment filed today.

* * *

For the reasons stated, the court grants defendants' motion to compel arbitration and orders the parties to arbitrate in accordance with the terms of their agreement. The court dismisses this action by judgment filed today.

**SO ORDERED**.

February 17, 2023.

                                          _____
                                        SIDNEY A. FITZWATER
                                        SENIOR JUDGE